# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
December 18, 2007 Session

## STATE OF TENNESSEE v. DOMINIC LAMAR BLAIR

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2006-C-2164     Cheryl Blackburn, Judge**

---

**No. M2007-00484-CCA-R3-CD - Filed May 30, 2008**

---

The defendant, Dominic Lamar Blair, pled guilty to attempted second degree murder, a Class B felony, and attempted aggravated robbery, a Class C felony. He was sentenced as a Range I, standard offender to consecutive terms of twelve years and five years, for an effective sentence of seventeen years in the Department of Correction. On appeal, he argues that the trial court imposed an excessive sentence by not applying certain mitigating factors and by ordering consecutive sentencing. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and D. KELLY THOMAS, JR., JJ., joined.

F. Michie Gibson, Jr., Nashville, Tennessee, for the appellant, Dominic Lamar Blair.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Jeff Burks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

At the guilty plea hearing, the prosecutor set out the facts surrounding the defendant's convictions:

> [T]he proof would be there were a number of incidents in this area – this is 342 Hickory Hollow Terrace – where various . . . pizza delivery persons had been robbed. Sometimes it was by gunpoint and sometimes just by a group of people who crowded around and robbed in a strong-arm sense the pizza delivery person.

Due to this series of incidents the pizza delivery people – Domino's, I believe – called . . . the police department and told them about this. Detective [David] Achord went on January 16th, 2006, to 342 Hickory Hollow Terrace posed as a pizza delivery man. He attempted to deliver a pizza to that location. And when he did, he was confronted by a black male suspect with a handgun who demanded the pizza and the money. Detective Achord put the pizza down, identified himself as a police officer, and drew his weapon on the suspect. The suspect was armed. This was Dominic Blair [the defendant]. [The defendant] fired several times at Detective Achord who returned fire. [The defendant] was hit in the leg and admitted on the scene to planning to rob . . . whoever came with the pizza. He also admitted in an interview that he needed the money and that he called in the order and waited for the delivery and then attempted to rob Detective Achord.

At the sentencing hearing, Detective David Achord of the Metropolitan Nashville Police Department testified that on January 16, 2006, he posed as a pizza delivery man in response to a call from a pizza delivery man who suspected he was being set up to be robbed. Detective Achord concealed his weapon under the insulated pizza box as he ascended the stairs at the apartment complex to make the delivery. As he entered the breezeway, Detective Achord encountered the defendant, armed with a revolver, and two accomplices. All three were wearing black bandanas. Detective Achord said he remembered dropping the pizza box but could not recall who fired the first shot. He said he fired "at the very most four rounds," and the defendant returned fire. The defendant then fell backward to a sitting position, causing Detective Achord to believe he was injured. Detective Achord turned around to ascertain the location of the two accomplices and to look for the backup officers. While Detective Achord's back was turned to the defendant, the defendant began shooting at him again, and Achord returned fire. The defendant only ceased shooting when he ran out of bullets. Detective Achord said he was not injured in the incident.

Detective Michael Donaldson of the Metropolitan Police Department testified that when he arrived at the scene of the robbery, the defendant was in custody and told him that Detective Achord had shot him after he pointed his gun at him. Detective Donaldson later interviewed the defendant at Vanderbilt Hospital after advising him of his Miranda rights. The defendant told him that he had waited behind the stairs for the pizza delivery man and that the delivery man shot at him because he pointed his gun at him first. The defendant said he had fired his gun nine times but had "shot up in the air." The defendant said that his codefendant, Carlon Menifee, had provided him with the weapon at a planning meeting prior to the robbery. The defendant said that it was his turn to use the gun because he was trying to join Menifee's gang. The defendant also admitted his involvement in a prior ATM robbery where the victim was shot at because he sped away and another robbery where a BB gun was used.

Anita Blair, the defendant's mother, testified that she lived with her sister, Netty Blair, and that the defendant could live with them if released. She acknowledged that the defendant had a shoplifting charge when he was thirteen years old, for which he had to "see a counselor." Ms. Blair

denied that the defendant was involved in a gang but acknowledged that Menifee belonged to a gang.

The fifteen-year-old[1] defendant testified that he was involved in a prior ATM robbery with Carlon Menifee and Marcus Gourley. He said that Menifee supplied the gun used in the ATM robbery and that the same gun was used in the pizza robbery. He said that Menifee belonged to a gang and had encouraged him to join it. The defendant said that he, Treon Harvell, and Marcus Gourley participated in the pizza robbery at the direction of Menifee. He denied that he participated in the robbery in order to join the gang. Menifee told him it was his turn to carry the gun and gave him the gun about thirty to forty-five minutes prior to the robbery. He admitted pointing the gun at Detective Achord and said Achord shot him in the leg, after which he fell down and he and Detective Achord exchanged fire. The defendant admitted that, prior to the robbery, he had smoked marijuana and taken an Ecstasy pill, which were provided by Menifee. He acknowledged he had a prior shoplifting charge for which he went "downtown and talked to a lady." The defendant said he was in the seventh grade at the time of the robbery but should have been in the ninth.

At the conclusion of the hearing, the trial court, applying three enhancement factors and finding that the defendant was a dangerous offender, sentenced him to consecutive terms of twelve years for the attempted second degree murder conviction and five years for the attempted aggravated robbery conviction, for an effective sentence of seventeen years.

## ANALYSIS

The defendant argues that the trial court erred in not applying certain mitigating factors to his sentence, saying that he and "the other two juveniles involved in these two criminal incidents were under the influence of Carlon Menifee who was older than the juveniles, who plied them with drugs, planned the robberies, supplied the weapon used in the robberies and tried to entice them into joining a gang." Specifically, he argues that the trial court should have applied factors (6), "[t]he defendant, because of youth or old age, lacked substantial judgment in committing the offense" and (12), "[t]he defendant acted under duress or under the domination of another person, even though the duress or the domination of another person is not sufficient to constitute a defense to the crime." Tenn. Code Ann. § 40-35-113(6), (12) (2006).

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871

---

[1] The defendant was fourteen years old at the time of the offenses.

S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

In rejecting the mitigating factors argued by the defendant, the trial court concluded:

> So in order to look at the factors, several of them the defense has pointed out to me, I would have to disregard the fact that there's been an earlier incident where the defendant has used the weapon, that he's been involved in an ATM robbery where the victim was shot at, the planning that went on with this. All of that to me indicates that there was no strong provocation, that even though he is young and that it – it's one of the tragedies of this case – he was involved in a lot of different judgments and thought out with regard to what they were going to do. And the defendant says or the allegation is that these were unusual circumstances, that he's unlikely to have a sustained intent to violate the law, however, he's done it before. He knew it was his turn to carry the weapon. So that's not borne out by the facts. And this issue about whether or not he was under the domination of Mr. Menifee, Mr. Menifee was older and he was still a juvenile himself. But the fact of the matter is the defendant was a clear actor in this situation and had on many occasions made judgment calls that involved his participation. So I do not find that any of the mitigating factors apply that were cited.

> Looking at all the other factors involved, I do not see that. His youth – I mean, he is young, but this is a situation where they purposefully set out to rob somebody with a gun knowing that the gun – what will happen. They shot at somebody else at an ATM robbery. So I'm not going to find any mitigating factors apply.

The record clearly shows that the trial court considered the mitigating factors which the defendant argues on appeal were applicable. However, the court concluded that, based upon the facts of the case, the factors were not applicable. The record supports this determination. State v. Fletcher, 805 S.W.2d 785,789 (Tenn. Crim. App. 1991).

The defendant also argues on appeal that the trial court should not have ordered that his sentences be served consecutively. In imposing consecutive sentencing, the trial court found that the defendant was a "dangerous offender":

> Now, multiple convictions. There are no factors that would apply except for this one. And, that is, that he is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. Looking at that and the facts of this case the thing that's most persuasive to me is once he shot at Detective Achord, he got shot. He was on his back. Detective Achord turns his back, and the defendant shoots again until, as Detective Achord testified, he emptied his weapon and had no more. So there was a distinct series of volleys, and then he shot again after Detective Achord had turned his back. That's a dangerous offender. And the aggregate term requires that the severity of these offenses be served consecutively. And it's necessary to protect the public from further serious conduct by the defendant. So these offenses are going to be running consecutive to each other. They will be in the Department of Corrections. And he will be getting all of his prior jail credit. So that's my decision on this. So five and twelve, a total effective sentence of seventeen years in the Department of Corrections.

Tennessee Code Annotated section 40-35-115 provides that a trial court may in its discretion impose consecutive sentencing when it finds any one of a number of different factors by a preponderance of the evidence, including that the defendant is a dangerous offender whose behavior exhibits little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. Tenn. Code Ann. § 40-35-115(b)(4). When a trial court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it is required to make further findings that the aggregate length of the defendant's sentence reasonably relates to the severity of his offenses and is necessary to protect the public from further criminal conduct of the defendant. State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995).

We conclude that the record supports the findings of the trial court and the imposition of consecutive sentencing.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
ALAN E. GLENN, JUDGE